## NADEAU ET AL. v. UNION PACIFIC RAILROAD COMPANY.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 119.   Argued January 9, 12, 1920.—Decided June 7, 1920.

The fact that tracts of land forming parts of the reservation set apart for the Pottawatomie Indians by the Treaty of 1846, 9 Stat. 853, became subject to be allotted to individual members of the tribe, under the Treaty of 1861, 12 Stat. 245, in virtue of occupation and improvements by such members, did not divest the United States of the fee to such tracts or prevent the granting of a railroad right of way across them by act of Congress. P. 446.

Such lands remained "public lands" within the meaning of the Act of July 1, 1862, c. 120, 12 Stat. 489, granting to the Union Pacific Railroad Company a right of way 200 feet in width on each side of said railroad where it may pass over the public lands. P. 444. *Kindred* v. *Union Pacific R. R. Co.*, 225 U. S. 582.

Upon the identification of the railroad route, the right of way grant took effect as of the date of the granting act, and was unaffected by intervening allotments under the last named treaty or by the patents issued subsequently thereunder for the lands so allotted. P. 445–446.

Land constituting part of the right of way granted by Congress for the
    Union Pacific Railroad cannot be acquired by individuals by adverse
    possession. P. 446.
Affirmed.

THE case is stated in the opinion.

  *Mr. A. E. Crane;* with whom *Mr. Z. T. Hazen* and *Mr.
J. B. Larimer* were on the briefs, for plaintiffs in error.

  *Mr. R. W. Blair* and *Mr. N. H. Loomis,* with whom *Mr.
H. W. Clark* was on the brief, for defendant in error.

  MR. JUSTICE McREYNOLDS delivered the opinion of the
court.

  Defendant in error brought this action to obtain posses-
sion of certain lands, formerly part of the Pottawatomie
Indian Reservation and now in Pottawatomie County,
Kansas, which lie in the margins of the 400-foot strip
claimed by it as legal successor to the original grantee.
Counsel for plaintiffs in error well say, but one question is
presented for our determination—"Were the lands
involved in this action 'public lands' within the meaning
of the acts of Congress dated July 1, 1862, and July 2,
1864, granting a right of way to the Leavenworth, Pawnee
& Western Railway Company and its successors?"

  The cause was tried by the court below upon pleadings
and Agreed Statement of Facts; and a memorandum states
the reasons for judgment favorable to the railroad.

  By the Act of July 1, 1862, c. 120, 12 Stat. 489, Congress
granted a right of way "two hundred feet in width on each
side of said railroad where it may pass over the public
lands" (*Stuart* v. *Union Pacific R. R. Co.*, 227 U. S. 342,
345), and declared "The United States shall extinguish as
rapidly as may be the Indian titles to all lands falling
under the operation of this act and required for the said

right of way and grants hereinafter made." Some amendments added by the Act of July 3, 1866, c. 159, 14 Stat. 79, are not specially important here.

It is said that under treaties of 1846 and 1861 with the United States (9 Stat. 853; 12 Stat. 245) the Pottawatomie Reservation was no part of the "public lands"; moreover, that Congress lacked power to grant rights therein to a railroad company.

In *Kindred* v. *Union Pacific R. R. Co.*, 225 U. S. 582, 596, lands in the Delaware Diminished Indian Reservation—east of the Pottawatomies—were declared "public lands" within the intendment of the right-of-way clause, Act of 1862, although then actually occupied by individual members of the Tribe under assignments executed as provided by treaty. That case renders clear the definite purpose of Congress to treat Indian Reservations, subject to its control, as public lands within the right-of-way provision. This provision is not to be regarded as bestowing bounty on the railroad; it stands upon a somewhat different footing from private grants and should receive liberal construction favorable to the purposes in view. *United States* v. *Denver & Rio Grande Ry. Co.*, 150 U. S. 1, 8, 14.

Whether Congress had power to make grants in respect of the lands here involved must be determined upon a consideration of their history.

November 14, 1862, the railroad company accepted the Act of 1862, and during 1865 and 1866 duly constructed its road through the Pottawatomie Reservation—so far as appears, without protest or objection.

By the Treaty of 1846—Article 4—the United States agreed to grant to the Pottawatomie Indians possession and title to a district thirty miles square, on the Kansas River, and to guarantee full and complete possession thereof "as their land and home forever." 9 Stat. 854.

In 1861 the same parties entered into another treaty

which stipulated—Articles 1 and 2—that land within the Reservation designated by the Treaty of 1846 should be allotted thereafter in severalty to tribal members who had acquired customs of the whites, and desired separate tracts; that the United States' agent should take an accurate census showing those desiring to hold in severalty and those desiring to hold in common, and "thereupon there shall be assigned, under the direction of the Commissioner of Indian Affairs," specified amounts of land "to include, in every case, as far as practicable, to each family, their improvements and a reasonable portion of timber, to be selected according to the legal subdivision of the survey." "When such assignments shall have been completed, certificates shall be issued by the Commissioner of Indian Affairs for the tracts assigned in severalty, specifying the names of the individuals to whom they have been assigned, respectively, and that said tracts are set apart for the perpetual and exclusive use and benefit of such assignees and their heirs."

Article 5, Treaty of 1861, offered certain privileges to the railroad company which were never accepted; the road was not constructed as provided by the treaty, but under the act of Congress.

Subsequent to July 1, 1862, a census was duly taken; commissioners, appointed January 16, 1863, made allotments, and in November, 1863, submitted their report. The Secretary of the Interior, December 12, 1864, approved allotments for the lands now involved to tribal members having improvements thereon before the Treaty of 1861, and who had continued to live there. Patents thereto issued at different dates, the earliest being June 14, 1867, without expressly reserving a right of way for the railroad. Plaintiffs in error claim through mesne conveyances from those who received such allotments and patents.

It seems plain that, at least, until actually allotted in

severalty (1864) the lands were but part of. the domain held by the Tribe under the ordinary Indian claim—the right of possession and occupancy—with fee in the United States. *Beecher* v. *Wetherby*, 95 U. S. 517, 525. The power of Congress, as guardian for the Indians, to legislate in respect of such lands is settled. *Cherokee Nation* v. *Southern Kansas Ry. Co.*, 135 U. S. 641, 653; *United States* v. *Rowell*, 243 U. S. 464, 468; *United States* v. *Chase*, 245 U. S. 89.

The grant of the right of way in 1862, was present and absolute and, upon identification of the route, took effect as of the date of the act. All who thereafter acquired public lands took subject to such granted right. *Railroad Company* v. *Baldwin*, 103 U. S. 426, 430. Although parties to the Treaty of 1861 contemplated future allotments, it made none. No individual title to any portion of the land arose until allotted, and none was allotted until after 1862.

Any claim by plaintiffs in error based upon adverse occupancy or possession is precluded by *Northern Pacific R. R. Co.* v. *Smith*, 171 U. S. 260; *Northern Pacific Ry. Co.* v. *Townsend*, 190 U. S. 267; *Northern Pacific Ry. Co.* v. *Ely*, 197 U. S. 1; *Kindred* v. *Union Pacific R. R. Co.*, supra, 597.

We find no error in the judgment below and it is

*Affirmed.*

MR. JUSTICE CLARKE dissents.

MR. JUSTICE HOLMES, MR. JUSTICE PITNEY and MR. JUSTICE BRANDEIS did not participate in consideration or decision of this case.