### CRAMER et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 10, 1921.)

No. 3657.

1. **Public lands ⬅75—Land occupied by Indians not embraced in railroad grant, "otherwise disposed of."**

In view of the uniform policy of the United States to respect Indian occupancy of public lands, Act July 25, 1866, § 2, making a grant of lands to the California & Oregon Railroad Company, *held* not to include within the grant any legal subdivision of 40 acres any part of which was then occupied and had been improved by an Indian settler; such land having been "otherwise disposed of" within the meaning of the act, in lieu of which, if within the boundaries of the grant, the company was authorized to select other lands.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Otherwise.]

2. **Indians ⬅27(5)—United States may maintain suit to protect rights of Indians in land.**

The United States in its own right and in its capacity of guardian for the Indians may maintain a suit to protect the rights of Indians in public lands.

**3. Abatement and revival ⊙═8(2)—Pendency of private suit for possession of land not a bar to suit by United States to cancel patent.**

The pendency of a suit between private parties in a state court involving possession of land is not a bar to a suit by the United States to cancel a patent for the land.

**4. Estoppel ⊙═62(5)—United States not estopped by unauthorized acts of officers.**

The fact that a department accepted leases of lands from a railroad company *held* not to estop the United States from maintaining a suit for cancellation of the patent to the land on the ground that it was excepted from the grant under which the patent was issued.

Appeal and Cross-Appeal from the District Court of the United States for Second Division of the Northern District of California; Frank S. Dietrich, Judge.

Suit in equity by the United States against Fred W. Cramer, Ira B. Cramer, and the Central Pacific Railway Company. From the decree, both parties appeal. Reversed on complainant's appeal.

The United States sued to cancel a patent alleged to have been issued without authority to the Central Pacific Railway Company in 1904. The patent was issued under the act of Congress approved July 25, 1866 (chapter 242, 14 Stat. 239), making a grant of land to California & Oregon Railroad Company to aid in the construction of a railroad from a connection with the Central Pacific Railroad at Roseville, Cal., to the line between Oregon and California.

The government's position is that for years prior to 1904 and from time immemorial the Indians occupied and claimed the lands, and that none of the Indian rights were extinguished by the act of 1866 hereinbefore cited. The defendants denied occupation and use, pleaded the statute of limitations, and sale by the railroad company to defendants Cramer under executory contracts made in 1916 and 1917; the sales being subject to leases made by the United States for the benefit of the Indians.

The District Court held that from 1859 the Indian occupants have been in possession of certain of the lands; have fenced between 150 and 175 acres thereof, and improved the same; that they acquired substantial rights respected by the government and that such title as the railroad company acquired is subject to the Indian right of occupancy subject only to interference by the United States, and made a decree in favor of the right of the Indian occupants to remain in possession of the lands and only the lands actually inclosed by fence.

The defendants below appealed, and the United States filed a cross-appeal.

Frank Thunen and E. J. Foulds, both of San Francisco, Cal., for appellants.

S. W. Williams, Sp. Asst. Atty. Gen., for the United States.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] This case affects two individual Indians, remnants of a band that since 1859 have lived in a small valley in Siskiyou county, Cal. The Indians have occupied and cultivated and inclosed certain of the lands involved. May their occupancy and improvement be regarded as constituting a reservation or disposition of the lands?

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Section 2 of the grant of public lands to the Railroad Company, predecessor of Central Pacific Railway Company, contained the following language:

" * * * And when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands designated as aforesaid, shall be selected * * * in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections designated by odd numbers as aforesaid, nearest to and not more than ten miles beyond the limits of said first-named alternate sections." 14 Stat. 239, Act Congress July 25, 1866.

While it is true that prior to the Act of March 3, 1875, 18 Stat. 420 (Comp. St. § 4611), extending the homestead privileges to Indians, Congress did not recognize the individual right of an Indian to take a homestead under the homestead law, nevertheless, it has long been the policy of the Interior Department not to disturb the possession and occupancy of Indians who have long resided upon the public lands, and have cultivated and improved the same. Evidence of such a policy is found in Ma-gee-see v. Johnson, 30 Land Dec. 125 (1900), where it was held that lands there involved in the possession of Indians were not unappropriated public lands within the meaning of the homestead law; and in Shumacher v. State of Washington, 33 Land Dec. 454, where an Indian had settled upon land which was surveyed in 1880, while the grant to the state of Washington for school purposes was made by the act of Congress of February 22, 1889, c. 180, 25 Stat. 676, the ruling was that, inasmuch as at the date of the survey the land was in the possession of an Indian living apart from his tribe and cultivated by the Indian, it was "otherwise disposed of" under authority of Congress within the meaning of that term as employed in the act making the grant of school lands to the state. Secretary Hitchcock said:

"This Department has uniformly respected the occupancy of Indians upon the public lands living apart from their tribes, and has, by circular, directed the register and receiver of the several land offices to peremptorily refuse all entries or filings attempted to be made by others than the Indian occupants upon lands in the possession of Indians who have made improvements of any value whatever thereon (see circular of May 31, 1884, 3 L. D. 371; reissued October 26, 1887, 6 L. D. 341), and has held that such lands are not unappropriated lands within the meaning of section 2289 of the Revised Statutes and are therefore not subject to homestead entry. See Ma-gee-see v. Johnson (30 L. D. 125)."

To the rulings of the Department the courts will give much weight. U. S. v. Moore, 95 U. S. 760, 24 L. Ed. 588; Hastings & Dakota R. R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363; Midway Co. v. Eaton, 183 U. S. 602, 22 Sup. Ct. 261, 46 L. Ed. 347. It was held in Buttz v. No. Pac. R. Co., 119 U. S. 55, 7 Sup. Ct. 100, 30 L. Ed. 330, there can be no doubt that lands subject to Indian occupancy may be granted to others by Congress, but the language of the act under consideration in that case showed very clearly that Congress intended the grant to become effective as soon as the Indians were removed from the land or as the right of occupancy was terminated. Furthermore, in that case it appeared that the Indians had actually been removed to their respective reservations before the grant to the

Northern Pacific Railroad Company was held to be effective. In the present case for years prior to 1866 Indians occupied and improved the lands described in the decree, and the United States made no attempt to interfere or to disturb their possession. If the contention of the railroad company is correct, it necessarily leads to the conclusion that Congress meant to take away from the individual Indians homes which they had long possessed and improved and were in possession of when the grant was made; and, moreover, that such intention was expressed without making provision for compensation to the Indians. It may be that such a construction is the true one; but, in the absence of clear expression or binding authority in support of it, we shall adopt a view more in harmony with the idea repeatedly announced: that the Government meant to protect the Indians in their occupancy and possession. We, therefore, hold that the learned judge of the District Court was correct in deciding that, although the right of the Indians was only that of occupancy, nevertheless it was a substantial right respected by the United States, and not to be invaded by private individuals without authority of law, and that the lands actually occupied and improved at the time of the grant were reserved and otherwise disposed of, subject always to be interfered with or terminated by the United States. Beecher v. Wetherby, 95 U. S. 517, 24 L. Ed. 440; Nadeau v. U. P. R. R. Co., 253 U. S. 442, 40 Sup. Ct. 570, 64 L. Ed. 1002.

[2, 3] It is also argued that the United States lacked the capacity to maintain the action by reason of want of interest; that there was no jurisdiction; and that there was a prior action pending in the state court, involving the same issues presented in the present controversy. Capacity to maintain suit by the United States in its own right and as guardian of the Indians was recognized in United States v. Board of County Commissioners of Osage County, 251 U. S. 128, 40 Sup. Ct. 100, 64 L. Ed. 184; Heckman v. U. S., 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820. We see no merit in the point that the case should have been abated because of the suggestion in the record that there was another case involving possession of the same land pending in a court of the state of California. The litigation in the state court involved the right of possession to the land, whereas the present suit is one to cancel the patent issued to the railroad company, a direct attack upon the patent by a suit which could be instituted and maintained only by the government itself.

[4] The doctrine of estoppel is inapplicable, for, granting that the Department of the Interior at one time accepted leases from the railroad company for the lands in question, if we are right in the view that the land was excepted from the grant of the railroad company, or even if the grant was taken subject to the right of Indian occupancy, then the acts of the agents of the government in taking leases was unauthorized, and the government is not bound by such unauthorized acts.

Nor can the appellant railroad company rely on the statute of limitations. N. P. Ry. Co. v. United States, 227 U. S. 355, 33 Sup. Ct. 368, 57 L. Ed. 544; United States v. Whited & Wheless, 246 U. S. 552, 38 Sup. Ct. 367, 62 L. Ed. 879.

By cross-appeal, the government has asked for a cancellation of the patent to the railroad company, and that the decree of the District Court be modified so as to sustain the right of the Indians to the possession of the entire area of each legal subdivision on which they have made any improvements, and that where any part of a 40-acre tract is shown to have been improved and used, such improvement and use extends to the entire subdivision. In Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800, the Supreme Court said that a settlement upon a portion of a quarter section of the public lands and the making of the improvements thereon as required by law will sustain a pre-emption claim to the whole quarter section as against subsequent settlers. It is generally true too that unless the law provides otherwise, public lands are disposed of only according to the legal subdivisions of the public survey, and that where there has been a use and occupation of one 40-acre tract, the whole technical quarter section will be excepted from a grant to a railroad company. The Interior Department so ruled in Union Pac. R. R. Co. v. Simmons, 6 Land Dec. 172, and in Melder v. White, 28 Land Dec. 412, 420. Applying the usual rule, Ellen Ruff should be allowed to retain the possession of the east half of the northeast and the southwest of the northeast quarter of section 23; and Maggie and George Wall should be allowed to retain the possession of the southwest quarter of the southwest quarter and the east half of the southwest quarter, the west half of the southeast quarter and the southeast quarter of the northwest quarter of section 13, because the evidence is that they have improved, used, and actually inclosed a considerable part of each of these several subdivisions.

Furthermore, we think it must follow that as the lands were actually occupied and lived upon and improved by the Indians, they were not public lands as included within the general land laws of the United States, and hence they did not pass under the grant to the railroad company, which was authorized to take lieu lands.

The decree is reversed, and the cause remanded, with directions to enter a decree canceling the patent.

Reversed.