**ADAMS et al. v. OSAGE TRIBE OF INDIANS et al.**

No. 642.

District Court, N. D. Oklahoma.

June 22, 1931.

F. E. Riddle, of Tulsa, Okl., and Holcombe, Lohman & Barney, of Pawhuska, Okl., for complainants.

John M. Goldesberry, U. S. Dist. Atty., of Tulsa, Okl., T. J. Leahy, of Pawhuska, Okl., Fred M. Carter, of Bartlesville, Okl., and W. P. McGinnis, of Tulsa, Okl., for defendants.

KENNAMER, District Judge.

The complainants seek by their bill to quiet title in and to the oil, gas, and other minerals under lands purchased by them from individual Osage Indian allottees. The Osage allottees, as grantors of the complainants, received their allotments pursuant to the provisions of the Allotment Act approved June 28, 1906 (34 Stat. 539). The defendants the Texas Company, a corporation, and the Indian Territory Illuminating Oil Company, a corporation, are the lessees of the lands involved in this action under leases executed by the Osage Tribe of Indians, through its Tribal Council, and approved by the Secretary of the Interior, which are commonly referred to as departmental leases.

The defendants have filed motions to dismiss the bill. The contention of the complainants is that as purchasers of the surplus allotments of individual allottees of the Osage Tribe, from whose allotments restrictions against alienation had been removed, or to whom a certificate of competency had been issued to such allottees, they became vested with the fee-simple title in such lands, including the oil, gas, and other minerals, subject

only to a reservation of the use of the oil and gas and other minerals to the tribe for a definite and fixed period of twenty-five years from April 8, 1906, and which expired on April 8, 1931, and that the Acts of Congress of March 3, 1921, and March 2, 1929, extending the reservation of the use of the oil and gas and other mineral rights for the benefit of the Osage tribe in common as provided for in the Allotment Act of June 28, 1906 (34 Stat. 539), in so far as such provisions in said acts affect complainants' property rights by reason of their purchasers from individual Osage allottees, are invalid and unconstitutional and contravene the Fifth and Fourteenth Amendments to the Constitution of the United States.

The contention of the complainants is untenable. A careful consideration of the various acts of Congress involved discloses that the complainants have never by reason of their purchases become vested with the title in and to the oil and gas and other minerals found under the lands involved in this action. The conveyances under which the complainants assert title plainly provide that they are subject "to all conditions, limitations and provisions of the Act of Congress of March 3, 1909 (35 Stat. 778), and the Act of Congress of June 28, 1906 (34 Stat. 539), "but if said conveyances contained no such reference it cannot be doubted that such conveyances would be subject to all of the provisions of said acts relating to the lands allotted to members of the Osage Tribe of Indians and held in trust by the government for their use and benefit. Any conveyance made in violation of the provisions of such acts would be void.

The United States on the 19th day of July, 1866 (14 Stat. 799), entered into a Treaty with the Cherokee Tribe of Indians under the terms of which the government was granted the right to settle friendly Indians in any part of the Cherokee country west of the Ninety-Sixth Meridian, to be taken in compact form.

By Treaty with the Osages on September 29, 1865 (14 Stat. 687) it was provided for the sale by the Osages to the government of a tract of land along the east edge of the Osage reservation in the state of Kansas fifty miles long north and south, and thirty miles wide east and west, for the sum of $300,000. By the same treaty the Osages also ceded to the United States a tract of land twenty miles wide north and south along the entire north side of the reservation in Kansas, the same to be held in trust by the government and sold for the benefit of said tribe. In this same treaty the Osages acknowledged their dependence on the government of the United States and invoked its protection. It was further provided that if the Osages agreed to remove from the state of Kansas and settled on lands provided for them by the United States in the Indian Territory, the reservation of the Osages in the state of Kansas should be disposed of by the United States for the benefit of the tribe.

By Act of Congress of July 15, 1870, § 12 (16 Stat. 362), the President was authorized and directed to remove the Osages from the state of Kansas to the Indian Territory to lands to be purchased in the Indian Territory from funds arising from the sale of their tribal lands in Kansas. By Act of June 5, 1872 (17 Stat. 228), it was provided that by reason of the fact the lands designated in the Indian Territory for the Osage Tribe of Indians and purchased from the Cherokees, and to which said Osage Tribe had been removed, were found on survey to lie east of the Ninety-Sixth Meridian, whereas the Treaty with the Cherokees required the land taken for friendly tribes should lie west of the Ninety-Sixth Meridian, and it was necessary to remove the Osage Tribe of Indians to a tract west of the Ninety-Sixth Meridian, and in said act is found the following pertinent provision: "In order to provide said Osage tribe of Indians with a reservation, and secure to them a sufficient quantity of land suitable for cultivation, the following-described tract of country, west of the established ninety-sixth meridian, in the Indian Territory, be, and the same is hereby, set apart for and confirmed as their reservation, namely: Bounded on the east by the ninety-sixth meridian, on the south and west by the north line of the Creek country and the main channel of the Arkansas river, and on the north by the south line of the State of Kansas." The Act of Congress of March 3, 1873, c. 228 (17 Stat. 530–538), provided for payment to the Cherokees for the lands purchased for the Osage Tribe of Indians in the Indian Territory out of any funds arising from the sale of the Osage lands in the state of Kansas. By the Act of Congress of February 28, 1891 (26 Stat. 795, § 3 [25 USCA § 397]), it was provided that where lands were occupied by Indians who had bought and paid for the same, and they were not needing it for farming or agricultural purposes, and not desired for individual allotments, such lands might be

leased by authority of the council acting for such Indians for mining purposes for a period not exceeding ten years, with the approval of the Secretary of the Interior. Section 1 of the Act of June 28, 1906 (34 Stat. 539), known as the Allotment Act, provides that "the tribal lands and tribal funds of said tribe shall be equally divided among the members of said tribe as hereinafter provided." Section 2 of said act (34 Stat. 540) provides for the giving to each member of the tribe his or her fair share thereof in acres, and the manner of selection thereof. Subdivision 7 of section 2 (34 Stat. 542) contains the following provision: "And provided further, That nothing herein shall authorize the sale of the oil, gas, coal, or other minerals covered by said lands, said minerals being reserved to the use of the tribe for a period of twenty-five years, and the royalty to be paid to said tribe as hereinafter provided: And provided further, That the oil, gas, coal, and other minerals upon said allotted lands shall become the property of the individual owner of said land at the expiration of said twenty-five years, unless otherwise provided for by Act of Congress." Section 3 of said act (34 Stat. 543) provides: "That the oil, gas, coal, or other minerals covered by the lands for the selection and division of which provision is herein made are hereby reserved to the Osage tribe for a period of twenty-five years from and after the eighth day of April, nineteen hundred and six; and leases for all oil, gas, and other minerals, covered by selections and division of land herein provided for, may be made by the Osage tribe of Indians through its tribal council, and with the approval of the Secretary of the Interior, and under such rules and regulations as he may prescribe." Subdivision 2 of section 4 of said act (34 Stat. 544) provides that the royalties from said lands should be placed in the Treasury of the United States to the credit of the members of the Osage Tribe, as other moneys of said tribe are deposited. Section 5 of said act (34 Stat. 544) provides: "That at the expiration of the period of twenty-five years from and after the first day of January, nineteen hundred and seven, the lands, mineral interests, and moneys, herein provided for and held in trust by the United States shall be the absolute property of the individual members of the Osage tribe, according to the roll herein provided for, or their heirs, as herein provided, and deeds to said lands shall be issued to said members, or to their heirs, as herein provided, and said moneys shall be distributed to said members, or to their heirs, as herein provided, and said members shall have full control of said lands, moneys, and mineral interests, except as hereinbefore provided." The Act of Congress of March 3, 1921 (41 Stat. 1249), extended the trust period to be exercised by the government over the minerals in the Osage allotments until the 8th day of April, 1946. By the Act of March 2, 1929 (45 Stat. 1478), the trust period over such mineral rights in said lands was further extended until January 1, 1959.

It is clear from a consideration of the various treaty provisions and the acts of Congress under which members of the Osage Tribe of Indians received their allotments that Congress is well within its plenary authority in extending the trust period over the mineral rights of lands allotted to members of the Osage Tribe of Indians. The authority of Congress over the Indians and their tribal relations, with full power to legislate concerning their tribal property, has been repeatedly sustained by the Supreme Court of the United States. Worcester v. State of Georgia, 6 Pet. 515, 8 L. Ed. 483; Williams v. Johnson, 239 U. S. 414, 36 S. Ct. 150, 60 L. Ed. 358; Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738; Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820; Nadeau v. Union Pacific R. R. Co., 253 U. S. 442, 40 S. Ct. 570, 64 L. Ed. 1002; Bowling v. United States, 233 U. S. 528, 34 S. Ct. 659, 58 L. Ed. 1080. In the last case cited, supra, the court said: "The guardianship of the Federal government over an Indian does not cease when an allotment is made and the allottee becomes a citizen of the United States." It is quite clear from a consideration of the Allotment Act of June 28, 1906, supra, and the subsequent provisions of the Act of March 3, 1921, and the Act of March 2, 1929, that Congress has never relinquished control over the mineral rights in the lands allotted to members of the Osage Tribe of Indians, but has equitably provided for the administration of the proceeds arising from the royalties from such mineral leases covering said lands as a trust fund for the benefit of the members of the tribe. In the case of Goodrum et al. v. Buffalo, 162 F. 817 (8 C. C. A.), the court at page 827 used language pertinent to the contention made by the complainants in this case: "It should be understood, once for all, that no scheme or device, however ingenious or plausible, concocted by any person, can avail to divest the Indians of the title to their allotted lands within the period of limitation.

prescribed by Congress." Treaties and statutes affecting Indians and their lands are to be construed most favorably to the Indian. Choate v. Trapp, 224 U. S. 665, 32 S. Ct. 565, 56 L. Ed. 941.

The bill of the complainants fails to state facts sufficient to entitle them to any relief and should be dismissed. It is so ordered.