764 P.2d 78 (1988)
115 Idaho 1
In re the General Adjudication of Rights to the Use of Water from the SNAKE RIVER BASIN WATER SYSTEM. (Two Cases)
The STATE of Idaho, ex rel. R. Keith HIGGINSON in his official capacity as Director of the Idaho Department of Water Resources, Petitioner-Respondent,
v.
The UNITED STATES of America; the State of Idaho; and all claimants of water from the Snake River Basin Water System, Defendants.
BOISE-KUNA IRRIGATION DISTRICT, Nampa & Meridian Irrigation District, New York Irrigation District, Wilder Irrigation District and Big Bend Irrigation District, Defendants-Appellants,
v.
The STATE of Idaho, ex rel. R. Keith HIGGINSON in his official capacity as Director of the Idaho Department of Water Resources, Petitioner-Respondent, and
The United States of America; The State of Idaho, Defendants-Respondents, and
Twin Falls Canal Company and North Side Canal Company, Intervenors-Respondents.
STATE of Idaho, ex rel. R. Keith HIGGINSON in his official capacity as Director of the Idaho Department of Water Resources, Petitioner-Respondent,
v.
The UNITED STATES of America, the State of Idaho, and all claimants to the use of water from the Snake River Basin Water System, Defendants-Respondents.
STATE of Idaho, ex rel. R. Keith HIGGINSON in his official capacity as Director of the Idaho Department of Water Resources, Petitioner-Respondent, and
Twin Falls Canal Company and North Side Canal Company, Intervenors-Respondents,
v.
WEISER IRRIGATION DISTRICT, Defendant-Appellant, and
Water District 67A and all Users therein, Defendants.
Nos. 17267, 17275.
Supreme Court of Idaho.
October 13, 1988.
*79 Hawley, Troxell, Ennis & Hawley, Boise, for defendants-appellants, Wilder Irr. Dist., Don A. Olowinski, argued.
Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendant-appellant, Nampa & Meridian Irr. Districts. William F. Ringert, argued.
Givens, McDevitt, Pursley, Webb & Buser, Boise, for defendant-appellant, New York Irr. Dist. Raymond D. Givens, argued.
Jim Jones, Atty. Gen., Clive Strong, Deputy Atty. Gen., Boise, for petitioner-respondent, State of Idaho. Clive Strong, argued.
Maurice O. Ellsworth, U.S. Atty., and Jeffery G. Howell, Asst. U.S. Atty., Boise, and William B. Lazarus, Asst. U.S. Atty. (argued) of Dept. of Justice, Lands Div., Washington, D.C., for defendants-respondents.
Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, for intervenors-respondents, Twin Falls Canal Co. and North Side Canal Co. Terry Thomas Uhling, argued.
JOHNSON, Justice.
This case involves the adjudication of water rights in the Snake River basin. The primary issue presented is whether the trial court properly included the Boise River and Weiser River sub-basins in defining the boundaries of the water system to be adjudicated. We affirm the commencement order of the trial court requiring the inclusion of these sub-basins in the adjudication. We hold that their inclusion is required in order to obtain jurisdiction over the United States under the McCarran Amendment (43 U.S.C. § 666).

I.

THE FACTS AND PRIOR PROCEEDINGS.
This case is a sequel to the decision of this Court in Idaho Power Co. v. State, 104 Idaho 575, 661 P.2d 741 (1983). In that case this Court held that the subordination clause included in the Federal Power Commission license granted to Idaho Power Company for the Hell's Canyon project applied only to the water rights at the Hell's Canyon project and not to those at Swan Falls or to any other dams further up the Snake River. This Court remanded the case to the trial court for further proceedings to resolve the affirmative defenses. *80 Idaho Power responded by filing a second lawsuit naming as defendants the State of Idaho and approximately 7500 persons claiming water rights in the Snake River basin. Idaho Power Co. v. Idaho Department of Water Resources, Ada County Civil Case Number 81375.
In 1984 in an effort to resolve these cases an agreement was entered into among the State of Idaho, the governor of the state of Idaho, the attorney general of the state of Idaho, and Idaho Power Company. As part of this agreement the parties agreed to support legislation for the commencement of an adjudication of the water rights of the Snake River basin.
In 1985 the Idaho Legislature enacted two bills  H.B. 70 and H.B. 267 (1985 Idaho Sess. Laws chs. 18, 118, pp. 27, 287)  which together constitute I.C. § 42-1406A. Section 1 of H.B. 70 enacted I.C. § 42-1406A (1) and (2). H.B. 267 amended I.C. § 42-1406A by adding a new subparagraph (3). H.B. 267 read as follows:
CHAPTER 118
(H.B. No. 267)
AN ACT
RELATING TO THE ADJUDICATION OF WATER RIGHTS IN THE SNAKE RIVER BASIN; AMENDING SECTION 42-1406A, IDAHO CODE, AS ENACTED BY HOUSE BILL NO. 70, FIRST REGULAR SESSION, FORTYEIGHTH IDAHO LEGISLATURE, TO PROVIDE INSTRUCTIONS TO THE DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES WHEN HE ADJUDICATES THE SNAKE RIVER BASIN FROM THE OREGON BORDER UPSTREAM; TO ALLOW THE DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES TO ADJUDICATE THE WATER RIGHTS OF THE MAIN STEM OF THE SNAKE RIVER WHICH FORMS THE BOUNDARY BETWEEN THE STATE OF IDAHO AND THE STATES OF OREGON AND WASHINGTON, AND TO INCLUDE WITHIN HIS PETITION FOR ADJUDICATION ANY ADJUDICATED TRIBUTARIES; AND TO PROHIBIT THE DIRECTOR OF THE DEPARTMENT OF WATER RESOURCES FROM READJUDICATING ANY TRIBUTARY OF THE SNAKE RIVER DOWNSTREAM WHICH PREVIOUSLY HAS BEEN ADJUDICATED UNLESS IT IS NECESSARY TO OBTAIN THE CONSENT OF THE UNITED STATES OR OTHER NECESSARY PARTIES.
Be It Enacted by the Legislature of the State of Idaho:
SECTION 1. That Section 42-1406A, Idaho Code, as enacted by House Bill No. 70, First Regular Session, Forty-eight Idaho Legislature, be, and the same is hereby amended to read as follows:
42-1406A. SNAKE RIVER BASIN ADJUDICATION  COMMENCEMENT. (1) Effective management in the public interest of waters of the Snake River basin requires that a comprehensive determination of the nature, extent and priority of the rights of all users of surface and ground water from that system be determined.
Therefore, the director of the department of water resources shall petition the district court to commence an adjudication within the terms of the McCarran amendment, 43 U.S.C. section 666, of the water rights of the Snake River basin either through initiation of a new proceeding or the enlargement of an ongoing adjudication proceeding. The petition shall describe:
(a) The boundaries of the system within the state to be adjudicated;
(b) Any class of water users within the system and the boundaries of any hydrologic sub-basins within the system for which the director intends to proceed separately with respect to the actions required or authorized to be taken pursuant to sections 42-1408 through 42-1414, Idaho Code; and
(c) The uses of water, if any, within the system that are recommended to be excluded from the adjudication proceeding.
(2) Upon issuance of an order by the district court which:

*81 (a) Authorizes the director to commence an investigation and determination of the various water rights to be adjudicated within the system;
(b) Defines the boundaries of the system within the state to be adjudicated;
(c) Defines the classes of water users within the system and the boundaries of any hydrologic sub  basins within the system for which proceedings may advance separately pursuant to sections 42-1408 through 42-1414, Idaho Code; and
(d) Defines any uses of water excluded for the adjudication proceedings;
the adjudication shall proceed in a manner provided under the provisions of chapter 14, title 42, Idaho Code, with the exception of sections 42-1406 and 42-1407, Idaho Code.
(3) In exercising his authority under subsection (1) of this section, the director of the department of water resources:
(a) Shall petition the district court to commence an adjudication of the water rights of all of the Snake River basin within the state of Idaho upstream from the point at which the Snake River leaves the state of Idaho and enters the state of Oregon in section 14, township 4 north, range 6 west, Boise Meridian; b) May petition the district court to commence an adjudication of the water rights of the main stem of the Snake River which forms the boundary between the state of Idaho and the states of Oregon and Washington. The director may include within his petition under this paragraph any unadjudicated tributaries. The director shall not include in the petition filed under this paragraph any adjudicated tributary unless the United States, or other parties whose consent is necessary, refuse to consent to the jurisdiction of the district court to adjudicate all federal or Indian water rights claims pursuant to the McCarran amendment, 42 U.S.C. section 666.
1985 Idaho Sess. Laws, ch. 118, p. 287.
The legislative history of H.B. 267 is clear that by "any adjudicated tributary" the legislature intended to refer to the Boise, Payette, Weiser and Lemhi Rivers (the adjudicated tributaries). The record demonstrates that none of these adjudicated tributaries have been fully adjudicated as to all water rights of the United States pursuant to the McCarran Amendment.
In 1987 the director of the Idaho department of water resources (the Director) filed a petition in the trial court "for the general adjudication inter se of all rights arising under state or federal law to the use of surface and ground waters from the Snake River basin water system and for the administration of such rights." In this petition the director alleged that the trial court had jurisdiction of all claims of the United States under the McCarran Amendment. The McCarran Amendment states in part:
Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of the rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.
43 U.S.C. § 666.
The petition proposed the adjudication of the rights to the use of all surface and ground waters of the Snake River basin water system within the state of Idaho upstream from and including the Salmon River basin. The petition stated that the Director was unable to ascertain whether the United States refused to consent to the jurisdiction of the trial court if the adjudication did not include the Boise River basin and the Weiser River basin, both of which are tributaries to that portion of the mainstream of the Snake River upstream from the confluence of the Snake River and the Salmon River. The petition also included as part of the prayer for relief a request that the trial court describe the boundaries of the water system to be adjudicated as contained in the petition "or as finally determined *82 by the district court to be necessary to obtain the consent of the United States to the jurisdiction of the district court for the adjudication of the Snake River basin water system." By response to the petition the United States filed a special appearance for the purpose of contesting the jurisdiction of the trial court over the United States pursuant to the McCarran Amendment and relevant state law. In support of this special appearance the United States asserted that the petition did not meet the consent to suit provisions of the McCarran Amendment and also did not comport with the requirements of I.C. § 42-1406A. The United States asserted that none of the four adjudicated tributaries, including the Boise River and the Weiser River, had been finally or completely adjudicated insofar as the rights of the United States were concerned. The United States took the position that under the McCarran Amendment the adjudicated tributaries had to be included within the scope of the Snake River basin adjudication proposed by the petition in order to establish the jurisdiction of the trial court over the United States. Idaho Power objected to the boundaries of the adjudication proposed in the petition of the Director and asserted that the entire Snake River basin within the state of Idaho had to be included in the adjudication in order for the adjudication to come within the terms of the McCarran Amendment. Irrigation and water districts in the Boise River and Weiser River basins asserted that I.C. § 42-1406A(3) did not require the special consent of the United States in order to exclude the adjudicated tributaries from the Snake River basin for the purposes of the adjudication, and that the exclusion of the Boise River and Weiser River basins from the adjudication would not destroy jurisdiction over the United States under the McCarran Amendment. Following a hearing, the trial court entered an order commencing the adjudication and included within the boundaries of the Snake River basin water system the four adjudicated tributaries, including the Boise River and Weiser River sub-basins. Five irrigation districts which draw their water from the Boise River and two water districts which use water from the Weiser River appealed the inclusion of the Boise River and Weiser River sub-basins in this commencement order. This Court has allowed two canal companies in the Twin Falls area to intervene in support of the inclusion of the Boise River and Weiser River sub-basins in the adjudications.

II.

IF THE LEGISLATURE HAD INTENDED TO ALLOW THE UNITED STATES TO DETERMINE THE BOUNDARIES OF THE ADJUDICATION BY ITS SPECIAL CONSENT TO THE EXCLUSION OF THE ADJUDICATED TRIBUTARIES, THAT WOULD HAVE BEEN AN UNLAWFUL DELEGATION OF LEGISLATIVE AUTHORITY.
The state of Idaho contends that I.C. § 42-1406A(3) was intended by the legislature to allow the United States to determine whether the adjudicated tributaries would be included within the boundaries of the Snake River basin for the purpose of the adjudication. The appellant irrigation districts and water districts contend that the consent referred to in I.C. § 42-1406A(3) refers merely to the consent given by Congress in the McCarran Amendment. The United States has not offered any special consent to the jurisdiction of the trial court beyond the consent enacted by Congress in the McCarran Amendment. Before reaching the question of what the McCarran Amendment requires in this case, we turn first to the argument that the legislature intended that the United States would have to give its special consent to the exclusion of the adjudicated tributaries. The legislative power of this state is vested in the legislature. Id. Const. art. 3, § 1. This Court has held that "[t]he legislature cannot delegate its authority to another government or agency in violation of our Constitution." Idaho Savings & Loan Ass'n.v. Roden, 82 Idaho 128, 134, 350 P.2d 225, 228-29 (1960). In Idaho Savings & Loan Ass'n.v. Roden, the statutes at issue required that Idaho savings and loan associations insure their *83 accounts with the Federal Savings & Loan Insurance Corporation as a condition precedent to doing business in the state of Idaho, or to the continuation of doing business in the state of Idaho. In order to obtain this insurance a savings & loan association was "required to abide by and conform with rules and regulations of the Federal Home Loan Bank Board adopted after the enactment of the Idaho legislation, and to abide by and conform with any amendment to Title 4 of the Housing Act relating to insurance of accounts which may become effective after the date of the Idaho act." Id. at 134, 350 P.2d at 228.
The trial court held that these unconstitutional provisions were severable and that the balance of the statutes relating to the insurance of savings and loan associations were enforceable. On appeal this Court stated that "the question to be resolved is whether or not the Legislature of the State of Idaho, contrary to the Idaho Constitution, Article 3, section 1, unlawfully delegated its authority to the federal government and an agency thereof." Id. In answering this question this Court held:
Thus, it is demonstrated that the unconstitutional provisions delegating to the Congress and the Home Loan Bank Board the legislative power and function to make future laws and regulations governing appellant's business and its right to remain in business, are not severable from the provisions requiring appellant to obtain insurance of accounts by Federal Savings & Loan Insurance Corporation. The provisions requiring such insurance are therefore unconstitutional and void.
82 Idaho at 135, 350 P.2d at 229.
It is also a fundamental principle of constitutional law that "[w]hen a statute is susceptible to two constructions, one of which would render it invalid and the other would render it valid, the construction which sustains the statute must be adopted by the courts." Leonardson v. Moon, 92 Idaho 796, 806, 451 P.2d 542, 552 (1969). See also Idaho State AFL-CIO v. Leroy, 110 Idaho 691, 698, 718 P.2d 1129, 1136 (1986). Applying these principles to the provisions of I.C. § 42-1406A(3)(b), we conclude that the legislature did not intend to require special future consent of the United States for the exclusion of the adjudicated tributaries from this adjudication. We construe the statute to refer to the existing consent given by Congress in the McCarran Amendment. To construe the statute as requiring special consent of the United States would lead us to the conclusion that the statute constituted an unlawful delegation of legislative authority in violation of art. 3, § 1 of our constitution. Therefore, we construe I.C. § 42-1406A(3)(b) as it relates to the consent of the United States to the inclusion of "any adjudicated tributary" in this adjudication to refer to the consent contained in the McCarran Amendment and not to some special consent of the United States.

III.

THE McCARRAN AMENDMENT REQUIRES THE INCLUSION OF THE BOISE RIVER AND WEISER RIVER IN THIS ADJUDICATION.
The necessity for the inclusion of all tributaries of the Snake River in order to obtain jurisdiction over the United States is made clear by the legislative and judicial history of the McCarran Amendment. When the language that now comprises 43 U.S.C. § 666 was proposed in the United States Senate by Senator McCarran, the report accompanying the bill stated:
The purpose of the proposed legislation, as amended, is to permit the joinder of the United States as a party defendant in any suit for the adjudication of rights to the use of water of a river system or other source or for the administration of such rights where it appears that the United States is the owner or is in the process of acquiring water rights by appropriation under State law, by purchase, exchange, or otherwise and that the United States is a necessary party to such suit.
... .
It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where *84 such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings. In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceeding. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts. Unless congress has removed such immunity by statutory enactment, the bar of immunity from suits still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States. Congress has not removed the bar of immunity even in its own courts in suits wherein water rights acquired under State law are drawn in question. The bill ... was introduced for the very purpose of correcting this situation and the evils growing out of such immunity.
... .
Since it is clear that the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.
S.Rep. No. 755, 82d Cong. 1st Sess. 2, 4-6 (1951). (Emphasis added.)
In correspondence with Senator Magnuson in 1951, Senator McCarran stated that the language now comprising the McCarran Amendment was "not intended to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream." Id. at 9.
In 1956 the 9th Circuit Court of Appeals referred to the type of adjudication required by the McCarran Amendment:
The only proper method of adjudicating the rights on a stream, whether riparian or appropriative or mixed, is to have all owners of lands on the watershed and all appropriators who use water from the streams involved in another watershed in court at the same time.
People of State of California v. United States, 235 F.2d 647, 663 (9th Cir.1956).
The next year the 5th Circuit Court of Appeals in discussing the type of suit to which the McCarran Amendment referred stated:
The United States has not given its consent to be joined as a defendant in every suit involving water rights. It may be made a party only in suits "for the adjudication of rights to the use of water of a river system or other source." There can be an adjudication of rights with respect to the upper Rio Grande only in a proceeding where all persons who have rights are before the tribunal.
Miller v. Jennings, 243 F.2d 157, 159 (5th Cir.1957).
Four years later the 9th Circuit again addressed the McCarran Amendment:
There can be little doubt as to the type of suit congress had in mind. It was not a private dispute between certain water users as to their conflicting rights to the use of waters of a stream system; rather, it was the quasi-public proceeding which in the law of western waters is known as a "general adjudication" of a stream system: one in which the rights of all claimants on a stream system, as *85 between themselves, are ascertained and officially stated.
State of California v. Rank, 293 F.2d 340, 347 (9th Cir.1961) rev'd on other grounds sub nom. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).
In Dugan v. Rank the United States Supreme Court held that an action to enjoin officials of the Bureau of Reclamation from impounding water at a federal dam on the San Joaquin River was not the type of "general adjudication of `all of the rights of various owners on a given stream,'" but that it was "a private suit to determine water rights solely between the respondents and the United States and the local Reclamation Bureau officials." 372 U.S. at 618, 83 S.Ct. at 1005 (citations omitted). In reaching this conclusion the court relied specifically on "the fact that all claimants to water rights along the river are not made parties." 372 U.S. at 618, 83 S.Ct. at 1005. Recently, the 9th Circuit has stated:
The McCarran amendment ... does not authorize private suits to decide priorities between the United States and particular claimants, only suits to adjudicate the rights of all claimants on a stream.
Metropolitan Water District of Southern California v. United States, 830 F.2d 139, 144 (9th Cir.1987), (citing Dugan v. Rank).
This history of the McCarran Amendment and the interpretations that the federal courts have given to it convince us that in order for the United States to be subject to the jurisdiction of the trial court in the Snake River basin adjudication, the rights of all claimants on the Snake River and all of its tributaries within the state of Idaho must be included in the adjudication.
The irrigation districts and the water districts that have appealed the inclusion of the Boise River and Weiser River in this adjudication contend that other court decisions interpreting the McCarran Amendment indicate that not all tributaries of a river system within a state must be included in a general adjudication under the McCarran Amendment. They rely heavily upon two decisions of the United States Supreme Court concerning the adjudication of water rights in Colorado. United States v. District Court, County of Eagle, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971) and United States v. District Court, Water Division No. 5, Colorado, 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971). Neither of these cases is in conflict with our decision here. The opinions in those cases must be read in light of the system of adjudication of water rights that is unique to Colorado. In the decision of the Colorado Supreme Court that was reviewed by the United States Supreme Court in United States v. District Court, County of Eagle, Colorado, the Colorado court described this unique system:
The following are considered as the "appropriation" states with respect to water adjudications: Alaska, Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, Utah, Washington and Wyoming. With the exception of Colorado all of the appropriation states have a statewide system of adjudicating priorities or issuing permits for the use of water. Until 1969 Colorado throughout its history has been divided into water districts and adjudicated priorities have been determined within each district. In 1969 the General Assembly of Colorado adopted Senate Bill 81 amending C.R.S. 1963, 148-21-1 et. seq. which consolidates the 70 water districts of the state into seven divisions, each of which embraces an entire river drainage area within the state.
... .
As the Government points out, priorities to the use of water are established by decrees of our district courts in the several water districts. Under our statutes there can be an original adjudication culminating in a decree fixing these priorities. Thereafter there can be a supplemental adjudication to establish priorities to the use of water not decreed in the original proceedings. There is no limit to the number of successive supplementary proceedings that may be had. The earliest priority granted in any supplemental adjudication must be later than the last priority established by the *86 next preceding adjudication. (Citation omitted.) Those appropriating water within the water district involved who were not served personally or by mail with notice of the proceedings are barred from attacking a decree after the lapse of two years. Those outside the water district may bring an action to adjust priority rights as between different districts within four years from the time of rendition of a decree having effect thereon. (Citation omitted.) In practically all of the districts in Colorado, prior to the adoption of the McCarran amendment in 1952, there had been not only original adjudications but supplementary adjudications.
United States v. District Court in and for County of Eagle, 169 Colo. 555, 458 P.2d 760, 762-63 (1969), aff'd. 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971).
While it is true that the United States Supreme Court agreed with the Colorado Supreme Court that the Eagle River, a tributary of the Colorado River, could be adjudicated under the McCarran Amendment, even though other parts of the Colorado River system within Colorado were not adjudicated in the same proceeding, this decision must be read in light of the unique system of water adjudication that exists in Colorado. In United States v. District Court, Water Division No. 5, Colorado, the Supreme Court clarified why the adjudication by district or division under the unique Colorado system qualified as a "general adjudication" under the McCarran Amendment:
The present suit, like the one in the Eagle County case, reaches all claims, perhaps month by month but inclusively in the totality; ... .
401 U.S. at 530, 91 S.Ct. at 1005.
Even though the Gunnison River was excluded from the adjudication in water division 5, it was included in the adjudication of water division 4. Colo. Rev. Stat.Annot. § 37-92-201(1)(d) (1973). Thus, the Gunnison River was adjudicated under the McCarran Amendment as part of Colorado's unique system of determining water rights. When read in the context of the system of adjudication in Colorado, neither Eagle County nor Water Division No. 5 would support the exclusion of the Boise River or the Weiser River from this adjudication.
We also reject the argument of the appellant irrigation and water districts that McCarran Amendment jurisdiction would exist if the Boise River and Weiser River sub-basins were excluded, because the main stem of the Snake River which forms the boundary between Idaho and Oregon and Washington is covered by the portion of the McCarran Amendment that refers to "other source." The source of the water in the main stem of the Snake River is the river system. The term "other source" refers to sources other than a river system, such as lakes or ground waters. It would destroy the intent of the McCarran Amendment to allow a river system to be fragmented into separate sources in order to obtain jurisdiction over the United States.

IV.

CONCLUSION.
We conclude that I.C. § 42-1406A requires that the adjudication of the Snake River basin be within the terms of the McCarran Amendment. The McCarran Amendment requires the adjudication of the rights of all those who use the water of a river system within a state, including those who use the water of tributaries.
We affirm the decision of the trial court requiring the Boise River and Weiser River sub-basins to be included in this adjudication.
Costs to respondents. No attorney fees were requested.
SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.
HUNTLEY, Justice, concurring specially.
I concur in the majority opinion as to Part I, III and IV and in the result as to Part II.
As to Part II, I do not see an "unlawful delegation of legislative" authority question *87 at all  it is somewhat of an example of a case being simple or complex depending upon how one frames the issue.
I see the issue as being not one of the Idaho Legislature delegating authority, but rather it is:
It being granted the United States has immunity from any suit, may it waive that immunity upon the condition that it will subject itself only to basin-wide adjudications?
The answer is an easy "yes"  if parties adjudicating a case in Idaho do not wish to make their action comprehensive, they are certainly free to litigate to their heart's content if they mind not that the extent of federal rights will not be adjudicated and the decree will be non-binding as to federal and Indian water rights.
The federal stance makes a lot of sense  why should taxpayer's money and court resources be wasted on piece-meal litigation which leaves the validity of water decrees subject to later adjudication as against omitted parties in the river basin?
Accordingly, I see the "state's rights" or unconstitutional delegation issues as merely diversionary, wasteful red-herrings which have been permitted to unnecessarily delay this litigation.
BISTLINE, Justice, dissenting.
There is no reason at this moment for not being brief. The case before us is of considerable moment, and no matter how this Court's opinion goes, there will be a petition or petitions for rehearing.
The claim of the irrigation districts and the water districts, and the user members thereof, as I understand the claim to be, is not that they assert any new water rights, but simply challenge the right of the state of Idaho in the person of its legislature to cause to be relitigated that which has been litigated, or to readjudicate that which has been adjudicated and gone to a final judgment.
It has been held that a water right is a property right. An adjudicated water right is a highly perfected water right. It is the decree or judgment of a state district court, and once wholly final is subject to no attack other than that it was fraudulently obtained. The McCarran Report partially reprinted in the majority opinion, at ___-___, 764 P.2d at 84-85, acknowledges that "the State courts are vested with the jurisdiction necessary and proper ... for the administration of and adjudication of water rights under state laws." This has always been my understanding. I agree with the Report in the statement that in practically every case all water users on a stream are interested parties to any court proceeding. I am not persuaded that all such water users are necessary parties in all cases, in the sense that the action cannot proceed without a state court (here, Idaho) gaining jurisdiction over them. A water user having a valid state judicial decree in his pocket, meaning one that flows from a valid court decree, will be interested,[1] of course, but not necessarily a necessary party. Else, why, one might ask, what has he gained by having once successfully litigated, if into litigation once again he will be forced?
The pertinent portion of the McCarran Report, at ___, 764 P.2d at 84, as I comprehend its language, is that it has in mind only those water users claiming a water right by reason of the ownership of the United States or any of its departments who seek to don the cloak of immunity which does shield the United States of America. The McCarran Act itself shreds that assumed cloak.
I take no umbrage with the final paragraph of the Report which is reprinted in the majority opinion, at ___, 764 P.2d at 84, i.e., "that it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, ..." My understanding that prior litigation on the tributaries of the Snake River afforded all owners on those rivers or streams the opportunity to be involved. If the opportunity *88 to litigate was present but eschewed, the litigation is nevertheless as final as to those who did not chose to participate as to those who did so. Such an action was basically in rem.
The McCarran Act undoubtedly is, as Justice Johnson has written, a Congressional waiver of otherwise unassailable federal immunity as to actions for stream adjudications brought in Idaho courts. The so-called "special appearance" of the United States on the part of the United States District Attorney for Idaho is in my view of no consequence. The law heretofore has been that the United States can only be sued by its consent, and if district attorneys are freely empowered to give or withhold that consent, I am woefully ignorant of that change. As for my part, until I become better informed, the United States of America, and each and all of its departments, agencies, bureaus, and whatever, are in court because of the McCarran Act, or, conversely, are not in court because of that Act's inapplicability, which I much doubt, and on which issue I agree with Justice Johnson's opinion.
But, accepting that the United States may be subject to jurisdiction of an Idaho state district court, I am left wondering how that conclusion necessitates a holding that water right users possessing valid judgments or decrees and, probably valid water rights of any degree, can be brought into this action against their will.
As mentioned above, it can be said confidently without citation that an adjudicated water right is a property right. Like any other property, it can be forfeited or abandoned, but there is no such claim here. Like any other property, it can be taken by such authorities as have the power of eminent domain, but a just compensation must be paid therefor.
Although feeling not obliged to search for authority in that vein, a study of Justice Johnson's opinion reassures me when I read on page 14 of the slip opinion his ten line excerpt from California v. Rank, 293 F.2d 340, in which litigation the state of California was positioned as is Idaho in this litigation, i.e., the defendant. The plaintiffs in that action were owners of the beneficial use of the river of the San Joaquin River below the dam. The United States over its protest was joined as a necessary party defendant.
What I make out of reading that case as it definitely has application to the case at hand, is that "... the United States has the power to acquire the rights of these plaintiffs through exercise of eminent domain." Rank, 293 F.2d at 354. And, "[w]hile a state can bestow property rights on its citizens which the United States must respect, it cannot take from the United States the power to acquire those rights." Id. at 354. Presently, the United States of America is not attempting to seize or otherwise appropriate any property rights. In fact, all that we see is the claim of the United States District Attorney, Idaho, that the United States is not in court.
I remain unable to see the grounds upon which the state of Idaho can force the owners of valid water rights to litigate that which is res judicata. Nor do I understand how the legislature can purport to authorize such. The legislature is prohibited by two constitutions from impairing the obligation of contract, and in my humble view, an adjudicated water right, especially one with whiskers, is on a higher plane than a contract.
Until better informed, I must respectfully dissent, and am deeply concerned with the plight which the state of Idaho has brought down on the innocent owners of water rights in Idaho. Those water rights are not free-hanging merchandise like tires and beer, but are appurtenant to lands which lands for the most part would be greatly devalued without water rights. To make such owners parties to this litigation is tantamount to an impermissible restraint on the right of free alienability of land.
NOTES
[1] In the common sense of the word, i.e., attentive, curious, but not in the sense of being affected by.