545 P.2d 1014

STATE of New Mexico on the relation of S. E. REYNOLDS, State Engineer and Pecos Valley Artesian Conservancy District, Plaintiffs-Appellants,

v.

L. T. LEWIS et al., Defendants-Appellees.

No. 10146.

Supreme Court of New Mexico.

Feb. 9, 1976.

Toney Anaya, Atty. Gen., Paul L. Bloom, Peter Thomas White, Richard A. Simms, Agency Asst. Attys. Gen., Santa Fe, John F. Russell, Roswell, for plaintiffs-appellants.

Victor Ortega, U. S. Atty., Albuquerque, Robert L. Klarquist, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Donald Redd, Asst. Atty. Gen., Land & Natural Resources, Dept. of Justice, Washington, D. C., George E. Fettinger, Kim J. Gottschalk, Alamogordo, amicus curiae, for defendants-appellees.

## OPINION

STEPHENSON, Justice.

This appeal arises out of the granting of a motion to dismiss the United States, a fiduciary for the Mescalero Apache Tribe, as a defendant in a general adjudication[1] of the Rio Hondo River System. The District Court of Chaves County ruled that New Mexico courts do not have jurisdiction to adjudicate the reserved water rights of the Mescalero Apache Indian Reservation. The plaintiffs, State Engineer and Pecos Valley Conservancy District (Pecos Valley), appeal. We reverse.

1. Sections 75–4–4 through –8 N.M.S.A.1953.

On December 5, 1973, the State Engineer and Pecos Valley filed a motion to reopen and file a consolidated petition to adjudicate the waters of the Rio Hondo River System, a part of the Roswell Artesian Basin adjudication begun in 1956. This motion was granted on January 10, 1974. The plaintiffs then sought temporary restraining orders against the United States, to prevent diversion of the waters of the Rio Ruidoso, a part of the river system, within the Mescalero Apache Reservation. These orders were entered. The defendant United States then moved to dismiss or to rescind the restraining orders. On July 8, 1974, a final order was entered by the district court dismissing the United States as a defendant based on a lack of jurisdiction under the McCarran Amendment,[2] the federal statute in which the United States consents to state adjudications of water rights.

The sole issue before us is whether the McCarran Amendment grants jurisdiction to state courts over the United States in general stream adjudications [3] involving reserved water rights on an Indian reservation. It must be emphasized that the question we decide today is purely jurisdictional. We do not decide the extent of the water rights of the Mescalero Tribe, the measure by which they should be determined, or the enforceability of any state adjudication decrees. We only consider whether the Mecalero Tribe through the United States can be joined in a general stream adjudication by virtue of the McCarran Amendment.

■ A related question is the applicability of Article XXI, Section 2 of the New Mexico Constitution, in which the State disclaims all right and title to Indian lands and submits to the jurisdiction and control of the United States over them. The United States argues that this section prohibits state adjudication of Indian water

rights. This argument is incorrect for two reasons. The State is not asserting a proprietary interest in Indian lands. See *Kake Village v. Egan*, 369 U.S. 60, 82 S. Ct. 562, 7 L.Ed.2d 573 (1962). Moreover, the State can exercise power over the Indians if the federal government has specifically granted it. *Your Food Stores, Inc. (NSL) v. Village of Espanola*, 68 N.M. 327, 361 P.2d 950 (1961), cert. denied, 368 U.S. 915, 82 S.Ct. 194, 7 L.Ed.2d 131 (1961). Therefore, Article XXI, Section 2 of the New Mexico Constitution is not relevant to the issue presented here.

■ The McCarran Amendment was enacted in 1952 and provides in part:

Joinder of United States as defendant; costs

(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation by State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided*, That no judgment for costs shall be entered against the United States in any such suit.

It is clear that the purpose of this statute is to facilitate state adjudication of a

---

2. 43 U.S.C. § 666(a) (1970) (originally enacted as Act of July 10, 1952, ch. 651, § 208(a), 66 Stat. 560).

3. See supra note 1.

stream system. As the sponsor of the bill, Senator McCarran, stated:

> [It is] to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process of acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value.

S.Rep.No.755, 82nd Congress, 1st Sess. 9 (1951). Certainly, in the case before us that is the purpose for which the McCarran Amendment is sought to be used by the State Engineer and Pecos Valley.

The United States argues that the McCarran Amendment does not apply to reserved Indian water rights due to the subsequent enactment of Public Law 280 (25 U.S.C. §§ 1321–23 (1970), originally enacted as Act of August 15, 1953, ch. 505, §§ 1–7, 67 Stat. 588). Public Law 280 granted certain states general civil and criminal jurisdiction over Indian reservations and made provisions for other states to assume such jurisdiction if they so wished. That Act reads in part:

> Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute, or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

25 U.S.C. § 1321(b) (1970).

Public Law 280 is irrelevant to the present controversy for two reasons. First, New Mexico was not granted, nor has it assumed general civil and criminal jurisdiction over Indian reservations located within the state. Second, Public Law 280 did not repeal or affect in any way the McCarran Amendment, which granted to all states jurisdiction to adjudicate federally reserved water rights, including those reserved for Indians. Jurisdiction over water rights was apparently excluded from Public Law 280 because it had already been conferred by the McCarran Amendment.

The McCarran Amendment has been interpreted several times since its enactment. It is established that the Amendment confers concurrent jurisdiction of the federal and state courts for adjudication of United States water claims. *In re Green River Drainage Area*, 147 F.Supp. 127 (D.Utah 1956); see also *United States v. Akin*, 504 F.2d 115 (10th Cir. 1974), cert. granted, 421 U.S. 946, 95 S.Ct. 1674, 44 L.Ed.2d 99 (1975). Normally then, the state district court is a proper forum for these suits.

The case at bar, however, involves reserved water rights held by the United States for the Mescalero Apache Tribe. In *U. S. v. District Court for Eagle County*, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971), the Supreme Court allowed state adjudication of reserved water rights of the United States. The State of Colorado sought a general adjudication of the Eagle River, a tributary of the Colorado River, in state court. The reserved water rights for the White River National Forest were part of the stream system. The United States, just as in this case, moved to be dismissed as a party, claiming the McCarran Amendment did not extend to reserved water rights. The United States Supreme Court held that the state courts had jurisdiction over reserved water rights of the United States. The Court characterized the McCarran Amendment as "an all-inclusive statute concerning 'the adjudication of right∙ to the use of water of a river system' which . . . has no exceptions and which, as we read it, includes appropriative rights, riparian rights, and reserved rights." 401 U.S. at 524, 91 S.Ct.

at 1002. Thus, it is clear from previous decisions that the state courts have jurisdiction over all water claims, including reserved rights, against the United States in general stream adjudications.

The more difficult question is whether jurisdiction exists under the McCarran Amendment when reserved water rights of Indians are at issue. The statute itself refers to water rights "where it appears that the United States is the owner of or is in the process of acquiring . . .." Does the United States "own" the reserved water rights of the Mescalero Tribe within the context of the statute? This question has been superficially answered by federal or state courts only once.[4]

In order to answer this question, we must examine the nature of a reserved water right of an Indian tribe. *Winters v. United States,* 207 U.S. 564, 28 S.Ct. 564, 52 L.Ed. 340 (1908) held that the United States reserved water rights for the Indians by implication when the reservations were created. This position has not been seriously questioned. In more recent times the Supreme Court has appropriately described the nature of a reserved water right:

> The Court in *Winters* concluded that the Government, when it created that Indian Reservation, intended to deal fairly with the Indians *by reserving for them* the waters without which their lands would have been useless. . . . We follow it now and agree that *the United States did reserve the water rights for the Indians* effective as of the time that Indian

Reservations were created (emphasis added).

*Arizona v. California,* 373 U.S. 546, 600, 83 S.Ct. 1468, 1498, 10 L.Ed.2d 542 (1963). We agree with this description of reserved rights. It reaffirms the principle that the United States reserved these rights for the Indians. Obviously, the United States could not reserve rights it did not own. Thus, the United States, as fiduciary for the Indians, holds legal title or "owns" reserved water rights much like a trustee who holds legal title to the res of a trust.[5] The appellees admit this in their own brief.[6] This special trust relationship between the United States and the Indian tribes has long been recognized. See, e. g., *Seminole Nation v. U. S.,* 316 U.S. 286, 296–97, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942); *United States v. Kagama,* 118 U.S. 375, 381–84, 6 S.Ct. 1109, 30 L.Ed. 228 (1886); *Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832); *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831).

The Supreme Court in *Arizona v. California,* supra, logically equated principles governing reserved water rights of Indians with those of other federal reservations.

The Master ruled that the principle underlying the reservation of water rights for Indian Reservations was equally applicable to other federal establishments such as National Recreation Areas and National Forests. We agree with the conclusions of the Master that the United States intended to reserve water sufficient for future requirements of the

---

4. On October 23, 1975, the United States District Court for the District of New Mexico ordered that a general adjudication brought in state court could not be removed to federal court by the defendant United States. *State ex rel. Reynolds v. United States,* No. 75–199 M Civil (D.N.M.1975). The United States was joined under the McCarran Amendment as trustee for various Indian lands along the San Juan River. This order has not been appealed.

5. This concept has been adopted when Indian lands were involved. In *Nadeau v. Union Pacific R.R. Co.,* 253 U.S. 442, 446, 40 S.Ct.

570, 571, 64 L.Ed. 1002 (1920), involving the right of way of a railroad on former Indian reservation lands, the Court stated: "It seems plain that . . . the lands were but part of the domain held by the Tribe under the ordinary Indian claim—the right of possession and occupancy—with fee in the United States."

6. "In its role as trustee for the Indian tribes, the United States holds legal title and administers tribal water rights, but beneficial 'ownership' remains with the Indian Tribes." Appellee's Brief at 8.

Lake Mead National Recreation Area, the Havasu Lake National Wildlife Refuge, the Imperial National Wildlife Refuge and the Gila National Forest.

373 U.S. at 601, 83 S.Ct. at 1498.

Justice Douglas speaking for the Court, in *U. S. v. District Court for Eagle County,* supra, also suggested that Indian reservations should be treated like other federal reservations.

As we said in *Arizona v. California,* 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542, the Federal Government had the authority both before and after a State is admitted into the Union "to reserve waters for the use and benefit of federally reserved lands." *Id.,* at 597, 83 S.Ct. 1496. *The federally reserved lands include any federal enclave. In Arizona v. California we were primarily concerned with Indian reservations. Id.,* at 598–601, 83 S.Ct. 1496–1498. (emphasis added).

401 U.S. at 522–23, 91 S.Ct. at 1001.

Therefore, the Supreme Court of the United States had held or suggested that (1) reserved Indian water rights were reserved by the United States at the creation of the reservations; (2) the United States holds these rights in trust as legal "owners" for the Indians as beneficiaries; and (3) the McCarran Amendment extends to all reserved rights of federal enclaves, including Indian reservations. We then have no choice but to conclude that the United States, as "owner" of reserved Indian water rights, can be joined as a defendant in general stream adjudications in state courts under the McCarran Amendment. We so hold. The Rio Hondo River System can now be adjudicated in an orderly and efficient manner.

The procedural question concerning the timeliness of the motion to reopen this suit is without merit.

The temporary restraining orders which were entered by the court below are not before us. The trial court did not directly rule upon the government's motion to rescind them, but rather granted the greater alternative relief sought by the government in dismissing the case. The propriety of their issuance is neither briefed nor argued here. Whether the State will seek to reassert or reinstate these orders we do not know. Such a course seems somewhat unlikely, since the State Engineer and Pecos Valley have said in their reply brief:

1 We have not asked the trial court to declare that either the United States or the Mescalero Apache Tribe is subject to the jurisdiction of the New Mexico State Engineer in respect to the diversion and use of the surface or underground waters of the Rio Hondo Stream System.

In any case, we do not wish to be understood by anything we have said to infer that such orders were properly entered.

The district court is reversed, and the case is remanded to the trial court with instructions to reinstate the case upon its docket and to proceed in a manner consistent with this opinion.

It is so ordered.

OMAN, C. J., and McMANUS, J., concur.