849 P.2d 372

**ELEPHANT BUTTE IRRIGATION DISTRICT, Plaintiff–Appellee,**

v.

**The REGENTS OF NEW MEXICO STATE UNIVERSITY, Intervenors–Defendants–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellant,**

v.

**Eluid L. MARTINEZ, New Mexico State Engineer, The City of El Paso, and All Claimants, Known and Unknown, to Water of the Rio Grande Stream System Between Elephant Butte Reservoir and the Texas State Line, Defendants.**

**ELEPHANT BUTTE IRRIGATION DISTRICT, Plaintiff–Appellant,**

v.

**Eluid L. MARTINEZ, New Mexico State Engineer, Defendant–Appellee,**

v.

**UNITED STATES of America, et al., Defendants.**

Nos. 13364, 13371 and 13450.

Court of Appeals of New Mexico.

Jan. 14, 1993.

Certiorari Denied March 17, 1993.

Beverly J. Singleman, Hubert & Hernandez, P.A., Las Cruces, for plaintiff-appellee and plaintiff-appellant Elephant Butte Irr. Dist.

Luis G. Stelzner, Charles T. DuMars, Judith D. Schrandt, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, for defendants-appellants Regents of NM State University.

Don J. Svet, U.S. Atty., Herbert A. Becker, Asst. U.S. Atty., Albuquerque, for defendant-appellant U.S.

Tom Udall, Atty. Gen., Eric Richard Biggs, Martha Clark Franks, Sp. Asst. Attys. Gen., Santa Fe, for defendant-appellee Eluid L. Martinez, NM State Engineer, and amicus curiae for State of NM ex rel. State Engineer.

## OPINION

FLORES, Judge.

The opinion filed December 14, 1992, is withdrawn and the following is substituted therefor.

These three appeals arise out of an attempted water rights adjudication of the Rio Grande between Elephant Butte Dam and the New Mexico/Texas state line. The suit was initiated by Elephant Butte Irrigation District (EBID), who named as defendants the state engineer, the United States, the City of El Paso, and all known and unknown claimants to the disputed water. In Court of Appeals No. 13,371, appellant United States contends that the district court should have granted its motion to dismiss because the federal statute waiving sovereign immunity for state water adjudications, 43 U.S.C.S. § 666 (1980) (McCarran Amendment) does not permit joinder unless the entire main stem of the Rio Grande in New Mexico is adjudicated. The United States further argues that, even if joinder is permissible, the New Mexico stream adjudication statute, NMSA 1978, Section 72–4–17 (Repl.1985), and SCRA 1986, 1–019 (Repl.1992), require dismissal. In Court of Appeals No. 13,450, an interlocutory appeal, appellant EBID argues that the dismissal of the state engineer as a party was improper because the district court misinterpreted applicable venue statutes. Finally, in Court of Appeals No. 13,364, an interlocutory appeal, appellant Regents of New Mexico State University (NMSU) contends that the district court should have granted its motion to dismiss for lack of an indispensable party as a result of the dismissal of the state engineer.

We hereby consolidate the three appeals, affirm the denial of the United States' motion to dismiss, and reverse the district court's dismissal of the state engineer. As a result of our disposition, it is not necessary to reach NMSU's appeal.

## FACTS

On September 12, 1986, EBID filed a complaint in the District Court of Dona Ana County for stream adjudication and injunctive relief. The complaint named as defendants the state engineer, the United States, the City of El Paso, and all known and unknown claimants to the surface or ground water of the Rio Grande between Elephant Butte Reservoir and the Texas state line. A first amended complaint was filed on October 14, 1986. Each of the three named defendants filed motions to dismiss. All four district judges in Dona Ana County recused themselves. Thereafter, Judge William Deaton of the Bernalillo County District Court was designated to hear the case. Judge Deaton granted the state engineer's motion to dismiss for lack of venue, but denied the other defendants' motions. No interlocutory appeal was taken.

On November 25, 1987, defendant City of El Paso filed a petition to remove the case to federal district court. The state district court thereafter dismissed the complaint without prejudice on December 8, 1987. On March 22, 1989, the federal district court granted EBID'S motion to remand or abstain, finding that the case was not removable because the action which ostensibly made the case removable was not brought by the voluntary act of EBID. After remand to the Dona Ana County district court, the case was reassigned to Otero County District Court Judge Robert M. Doughty. On February 15, 1990, Judge Doughty, sua sponte, issued an order granting EBID leave to amend the complaint to once again join the state engineer as a defendant, provided that EBID make no new allegations against existing parties in its amended complaint.

On March 12, 1990, the United States filed a motion to be dismissed as a party. The grounds for the motion were identical to those raised in the United States' earlier motion to dismiss: failure of the complaint to satisfy the requirements of the McCarran Amendment, failure to comply with Section 72-4-17, and failure to join an indispensable party. EBID's second amended complaint for stream adjudication was filed on March 14, 1990. The complaint sought (1) a general adjudication of rights to the water hydrologically connected to, and including, the Rio Grande between Elephant Butte Dam and the New Mexico/Texas line; (2) a hydrographic survey; and (3) to enjoin the state engineer from numerous acts, including any further appropriation of surface or ground water in the disputed area. The state engineer filed a motion to dismiss on April 20, 1990. Among other reasons for dismissal, the state engineer's motion asserted that the venue statute in effect when the original complaint was filed limited venue to the first judicial district in Santa Fe County, even though the venue statute had since been amended. NMSU filed a motion to dismiss the complaint on September 18, 1990, alleging that the state engineer is an indispensable party.

On May 17, 1991, the Dona Ana County district court entered an order which, among other things, dismissed portions of the complaint which sought to enjoin El Paso from appropriating certain ground water, but which left El Paso as a party for purposes of the adjudication of water rights. On August 16, 1991, the court denied the United States' motion to dismiss. Judge Doughty concluded that Judge Deaton's earlier ruling denying a similar motion would not be reconsidered because it was the "law of the case." Alternatively, Judge Doughty ruled against the United States on the merits of the motion. Judge Doughty concluded that the water users above Elephant Butte Dam were irrelevant to an adjudication of downstream users; as such, the purposes underlying the McCarran Amendment were satisfied under these facts and neither Rule 1-019 nor Section 72-4-17 mandated dismissal.

On August 16, 1991, the district court dismissed, without prejudice, the state engineer as a defendant. In the order of dismissal, the court concluded that the venue statute in effect at the time of the original complaint was applicable. Under the newer statute, in effect when the second amended complaint was filed, venue in Dona Ana County would have been permis-

sible. *Compare* NMSA 1978, § 38–3–1(G) (Cum.Supp.1986) *with* NMSA 1978, § 38–3–1(G) (Repl.Pamp.1990). The court certified this issue for interlocutory appeal.

On August 16, 1991, the district court denied NMSU's motion to dismiss for failure to join an indispensable party, i.e. the state and/or the state ex rel. the state engineer. The court adopted all of EBID's requested findings of fact and conclusions of law. The court concluded that the state engineer was not an indispensable party because he performs the role of a regulator rather than a holder of water rights in the disputed area. This issue was also certified for interlocutory appeal.

## DISCUSSION

### I. JOINDER OF THE UNITED STATES

We first consider the United States' contention that it should be dismissed as a party because: (A) the McCarran Amendment does not permit joinder of the United States in an adjudication of less than the entire stretch of the Rio Grande in New Mexico; (B) state court precedent (in another jurisdiction) has interpreted the McCarran Amendment to require full stream adjudication; and (C) failure to include water users above Elephant Butte Dam requires dismissal of the complaint under New Mexico's stream adjudication statute, Section 72–4–17, and Rule 1–019. While this appeal was pending, we granted the State of New Mexico's motion for leave to file an amicus curiae brief.

Initially, we address EBID's contention that the district court correctly ruled that the "law of the case" bars reconsideration of the merits of the motion to dismiss and, in any event, the United States waived its challenge to the court's ruling because it failed to submit requested findings and conclusions. Since EBID believes that the United States was required to appeal from the first order denying its motion to dismiss, it has moved to dismiss the appeal for failure to comply with the time requirements of SCRA 1986, 12–201(A).

▮ We deny EBID's motion for three reasons. First, the United States was not required to appeal the earlier ruling since it was not a final order. *See B.L. Goldberg*

& *Assocs. v. Uptown, Inc.,* 103 N.M. 277, 705 P.2d 683 (1985). Second, the law of the case doctrine applies to issues raised on remand that were addressed and decided at the appellate level. *See Reese v. State,* 106 N.M. 505, 745 P.2d 1153 (1987); *see also Black's Law Dictionary* 886–87 (6th ed. 1990). The law of the case doctrine has also been applied where jury instructions were not objected to below, although this is probably more accurately characterized as a preservation problem. *See Gerety v. Demers,* 86 N.M. 141, 520 P.2d 869 (1974). Even if the law of the case applied to the district court's previous ruling under the facts of this case, the doctrine is discretionary and thus should not be used to permit joinder of the United States in possible contravention of federal law. *See Reese,* 106 N.M. at 506–07, 745 P.2d at 1154–55; *see also Stroh Brewery v. Alcoholic Beverage Control,* 112 N.M. 468, 816 P.2d 1090 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1166, 117 L.Ed.2d 413 (1992). Third, with respect to EBID's waiver argument, a party is not required to submit requested findings and conclusions when a motion to dismiss is based on any of the defenses enumerated in SCRA 1986, 1–012 (Repl.1992). *See* SCRA 1986, 1–052(B)(1)(a) (Repl.1992).

Before discussing the merits of the United States' appeal, we deem it necessary to review the McCarran Amendment in the context of the evolution of western water law.

### A. *Legal Background*

New Mexico, like most Western states, follows the prior appropriation doctrine. N.M. Const. art. XVI, § 2 (Repl.Pamp.1992); *see also* NMSA 1978, § 72–1–1 (Repl.1985). This doctrine may be characterized as a "first in time, first in right" system, under which "[b]eneficial use [is] the basis, the measure and the limit of the right to the use of water." N.M. Const. art. XVI, § 3 (Repl.Pamp.1992); *see also* NMSA 1978, § 72–1–2 (Repl.1985). All rights vested prior to March 19, 1907, relate back to the initiation of the claim, i.e., the point at which the water was put to beneficial use. Section 72–1–2. Generally,

individuals seeking to appropriate water after that date are required to seek a permit from the state engineer. *Id.* Since 1931, the state engineer has declared individual groundwater basins throughout most of the state and has regulated appropriation of their waters. *See* NMSA 1978, § 72–12–18; *see generally* Charles T. DuMars, *New Mexico Water Law: An Overview and Discussion of Current Issues,* 22 Nat. Resources J. 1045 (1982). All rights existing prior to the declaration of groundwater basins are recognized. Section 72–12–18.

Under New Mexico's adjudication statute, "any suit for the determination of a right to use the waters of any stream system" requires joinder of all claimants to the water source who may be ascertained through reasonable diligence. Section 72–4–17. This statute has been held to be all-embracing because it requires adjudication of all surface and groundwater hydrologically connected to the stream system. *State ex rel. Reynolds v. Sharp,* 66 N.M. 192, 344 P.2d 943 (1959). In order to determine the geographical scope of the stream system and the amount of water available, the district court directs, by its order, the state engineer to conduct a hydrographic survey. Section 72–4–17.

■ In states that have adopted a prior appropriation regulatory scheme, water adjudications are intended to create a detailed hierarchy of users for times of shortage. *See* DuMars, *supra,* at 1045–46. Adjudication also facilitates conveyance of water rights, which are recognized property interests. *See New Mexico Prods. Co. v. New Mexico Power Co.,* 42 N.M. 311, 77 P.2d 634 (1937). Because of the huge federal presence in prior appropriation states, attempts to fully adjudicate water rights require federal participation in state adjudications. *See* S.Rep. No. 755, 82d Cong., 1st Sess. 4–5 (1951); *see also United States v. City & County of Denver ex rel. Bd. of Water Comm'rs,* 656 P.2d 1, 8–9 (Colo. 1982). In 1952, Congress enacted the McCarran Amendment as Section 208 of the Department of Justice Appropriation Act, 1953, ch. 495, 66 Stat. 556. It reads, in relevant part:

Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to such suit, shall (1) be deemed to have waived any rights to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances....

43 U.S.C.S. § 666(a).

■ This waiver of federal immunity from state procedures to quantify federal water rights was intended to avoid the "piecemeal adjudications of water rights in a river system," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), that would otherwise result. In *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), the Court held that the United States could not be joined in a suit between private water users because the McCarran Amendment required a general stream adjudication. The more-difficult problem—and the issue in the present appeal—concerns the meaning of the phrase "river system or other source." In other words, what constitutes a general adjudication of a river system sufficient to effectuate the purposes underlying the McCarran Amendment? Although *United States v. District Court In & For County of Eagle,* 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971), addressed the issue of whether or not federal reserved rights were subject to state quantification, the Court also discussed the United States' contention that the Eagle River, a tributary of the Colorado River, was not a "river system" within

the meaning of the McCarran Amendment. The Court stated, "No suit by any State could possibly encompass all of the water rights in the entire Colorado River which runs through or touches many States. The 'river system' must be read as embracing one within the particular State's jurisdiction." *Id.* at 523, 91 S.Ct. at 1001. In a companion case, the Court considered whether or not proceedings under Colorado's systematic water adjudication statute were "general adjudications" sufficient to permit joinder of the United States. *United States v. District Court in & for Water Div. No. 5*, 401 U.S. 527, 91 S.Ct. 1003, 28 L.Ed.2d 284 (1971). The Court noted that the Colorado scheme provided for monthly proceedings involving water rights applications on given stream systems. *Id.* at 529, 91 S.Ct. at 1004. The Court concluded that this systematic approach fulfilled the purposes of the McCarran Amendment because it "reaches all claims, perhaps month by month but inclusively in the totality." *Id.*

The New Mexico general water adjudication statute, Section 72–4–17, is sufficiently comprehensive to join the United States under the McCarran Amendment. *See United States v. Bluewater–Toltec Irrigation Dist.*, 580 F.Supp. 1434 (D.N.M.1984), *aff'd United States ex rel. Acoma & Laguna Indian Pueblos v. Bluewater–Toltec Irrigation Dist.*, 806 F.2d 986 (10th Cir. 1986). Thus, it can be said that the requirements of the McCarran Amendment and Section 72–4–17 are interchangeable as applied to the issue presented in this case, i.e., whether an adjudication of the water rights of the Rio Grande between Elephant Butte Dam and the Texas state line is sufficiently comprehensive to result in a meaningful decree.

The only New Mexico state court opinion discussing the McCarran Amendment is *State ex rel. Reynolds v. Lewis*, 88 N.M. 636, 545 P.2d 1014 (1976), which involved adjudication of the Rio Hondo. There, the issue was whether the McCarran Amendment granted jurisdiction to state courts over the United States in stream adjudications involving Indian reserved water rights. *Id.* at 637, 545 P.2d at 1015. The

opinion considered the United States Supreme Court decisions noted above in the context of the purpose of the McCarran Amendment and stated:

It is clear that the purpose of this statute is to facilitate state adjudication of a stream system. As the sponsor of the bill, Senator McCarran, stated:

[It is] to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process of acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value.

*Id.* at 637–38, 545 P.2d at 1015–16 (quoting S.Rep. No. 755, 82d Cong., 1st Sess. 9 (1951)).

There is one state court opinion that specifically addresses the scope of a main stem adjudication. In *In re Snake River Basin Water System*, 115 Idaho 1, 764 P.2d 78 (1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), the supreme court of Idaho held that all tributaries of the Snake River must be included in that river's adjudication to satisfy the "river system" requirement of the McCarran Amendment. In dicta, the court, summarily and without citation to any authority, rejected an argument that exclusion of the tributaries was permissible because the main stem section could be considered an "other source" under the McCarran Amendment. *Id.*, 115 Idaho at 9, 764 P.2d at 86. The court stated: "It would destroy the intent of the McCarran Amendment to allow a river system to be fragmented into separate sources in order to obtain jurisdiction over the United States." *Id.*

### B. *Analysis*

Turning to the merits of this appeal, there are two questions which must be addressed: (1) as a general proposition, whether adjudication of only a segment of a main stem of a river satisfies the requirements of the McCarran Act and Section 72–4–17, and (2) if not, whether the facts of

this case warrant an exception. For purposes of determining the geographical scope of the adjudication, if the adjudication satisfies the requirements of the McCarran Amendment, it will satisfy Section 72–4–17 because both statutes are intended to avoid piecemeal litigation by including all claimants to the water source. *See Colorado River Water Conservation Dist. v. United States; State ex rel. Reynolds v. Lewis.*

■ Based on the legislative history of the McCarran Amendment and the cases discussing it, we believe the answer to the first question is clearly that the lower Rio Grande is not a "river system." Under the McCarran Amendment, a state adjudication only has to include that portion of a river system within the state's jurisdiction. *County of Eagle,* 401 U.S. at 523, 91 S.Ct. at 1001. If the adjudication includes a portion of the main stem of the river, it should include all of the river system within the state's jurisdiction, including any tributaries, to qualify as an adjudication of the river system. *See In re Snake River Basin Water System.* Under certain circumstances, a particular adjudication might not include all the tributaries to the main stem of the river yet still qualify as an adjudication of the "river system" if the excluded tributary is being adjudicated separately. *See United States v. District Court in and for Water Div. No. 5.* However, that case involved Colorado's unique system of water rights adjudications; as a result, we do not believe it allows for a determination that an adjudication of only the portion of the Rio Grande between Elephant Butte Reservoir and the Texas state line is an adjudication of a river system.

The more-difficult question is whether or not there is something unique about this portion of the Rio Grande that would justify an exception to the general rule. The most-persuasive argument in favor of joinder is found in the state's amicus brief. It notes that the Rio Grande Compact requires New Mexico to deliver a specific amount of water to Elephant Butte Dam. *See* NMSA 1978, § 72–15–23 (Repl.1985). The quantity is calculated annually based on the amount of upstream flow near Cochiti Lake at Otowi Bridge. *Id.* at art. IV. Although the delivery obligation is set at Otowi Bridge, the amount of precipitation coming into the river between that point and Elephant Butte will obviously affect the amount of water actually delivered. This amount changes annually. *See* S.E. Reynolds and Philip B. Mutz, *Water Deliveries Under the Rio Grande Compact,* 14 Nat. Resources J. 201 (1974). The Compact takes this into account by providing for accrual of annual credits and debits. Section 72–15–23, art. VI.

The Rio Grande Compact is unique because Texas agreed to have water delivered at Elephant Butte Dam, approximately 100 miles north of the state border, rather than at the state line. As a result, the compact does not apportion a specific quantity of water between the two states. *See City of El Paso ex rel. Public Serv. Bd. v. Reynolds,* 563 F.Supp. 379 (D.N.M.1983). Texas apparently believed that delivery at the dam was preferable because the Rio Grande Project contracts independently apportioned water below the dam for both New Mexico and Texas users. *Id.* at 385–86; *see also* Raymond A. Hill, *Development of the Rio Grande Compact of 1938,* 14 Nat. Resources J. 163, 173–174 (1974).

■ The apportionment of water under state compacts is binding on private water claimants. *See Hinderlider v. La Plata River & Cherry Creek Ditch Co.,* 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202 (1938). Therefore, the delivery obligation of New Mexico is superior to the rights of the claimants along the Rio Grande upstream from Elephant Butte Dam. Because the Rio Grande Compact requires a specific amount of water to be delivered to the dam, but does not apportion the delivered water, there is a statutorily-mandated exception to the relationship that may otherwise exist between users upstream and downstream from the dam. Placed in the context of this appeal, the delivered but unapportioned water may be considered a separate "river system" for purposes of the McCarran Amendment and a separate "stream system" for purposes of Section

72–4–17. Adjudicating the inter se rights of the parties below the dam will therefore not result in a "piecemeal" decree because users above the dam may not use an amount of water in contravention of New Mexico's delivery obligations. *See id.* As a result, a general adjudication of the Rio Grande between Elephant Butte Reservoir and the Texas state line substantially complies with the requirements of the adjudication statutes. *See State ex rel. Reynolds v. Sharp.* Accordingly, we affirm the district court order denying the United States' motion to dismiss.

## II. JOINDER OF THE STATE ENGINEER

Appellant EBID appeals from the district court's order dismissing without prejudice the state engineer as a defendant. The district court dismissed on the basis that the venue statute in effect at the time the original complaint was filed controlled and required the state engineer to be sued in Santa Fe County. *Compare* NMSA 1978, § 38–3–1(G) (Cum.Supp.1986) (state officials must be sued in Santa Fe County) *with* NMSA 1978, § 38–3–1(G) (Repl.Pamp.1990) (state officials may also be sued in county where plaintiff resides). The order was filed on August 16, 1991. EBID raises three arguments to support its contention that venue in Dona Ana County is proper to hear claims against the state engineer. First, EBID argues that the New Mexico Constitution, which prohibits the legislature from changing the rules of procedure applicable to any pending case, N.M. Const. art. IV, § 34 (Repl.Pamp.1992), does not prohibit application of the amended venue statute because, as a result of the case's removal from state district court to federal district court, the case was not "pending" when the venue statute was amended. Second, EBID argues that, even if the earlier venue statute controlled, the district court had pendent venue over the claims. Third, EBID contends that Section 72–4–17 contains a specific venue provision that controls over the more-general provisions of the earlier venue statute.

Consideration of this appeal involves two levels of analysis. First, it is necessary to determine whether or not this was a "pending case" under Section 34 of article IV of the New Mexico Constitution between the time it was removed to federal court and the time it was remanded to the district court. If the case was deemed pending while before the federal court, then it is necessary to determine the effect of the mandatory venue provisions of the former version of Section 38–3–1(G). Of course, EBID could take advantage of the amended venue statute if it voluntarily dismissed the action and thereafter refiled in Dona Ana County. Because it has chosen not to do so, it is necessary for us to reach the constitutional and statutory issues raised on appeal.

### A. *Pending Case*

Section 34 of article IV of the New Mexico Constitution states: "No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." Whether or not an action is pending for purposes of this section has been the subject of only a handful of cases. In *Stockard v. Hamilton*, 25 N.M. 240, 180 P. 294 (1919), which held that section 34 does not apply to cases that have reached a final judgment, the court reviewed the purpose behind the constitutional provision:

We have been unable to find a constitutional provision like our own. The word "pending," according to Webster and Century Dictionary, means "depending," "remaining undecided," "not terminated," and this meaning of the word should be adopted in this connection. The evident intention of the Constitution is to prevent legislation [sic] interference with matters of evidence and procedure in cases that are in the process or course of litigation in the various courts of the state, and which have not been concluded, finished, or determined by a final judgment. This provision of the Constitution was inserted for the purpose of curing a well-known method, too often used in the days when New Mexico was under a territorial form of government, to win cases in the courts by legislation

which changed the rules of evidence and procedure in cases which were then being adjudicated by the various courts of the state.

*Id.* at 245, 180 P. at 299.

■ Based on *Stockard*'s summary of legislative intent, it may be reasonable to conclude that the present action was not pending for constitutional purposes from the time it was removed to federal court on November 30, 1987, until remand on March 22, 1989. The above-quoted language focuses on potential legislative tinkering with pending state court cases. Under the applicable federal removal statute, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C.S. § 1446(d) (1989). The majority view is that a state court is divested of jurisdiction in a civil case upon removal. *See* Michael J. Kaplan, Annotation, *Effect, on Jurisdiction of State Court, of 28 U.S.C.S. § 1446(e), Relating to Removal of Civil Case to Federal Court,* 38 A.L.R. Fed. 824 (1978) (subsection "(e)" was redesignated as subsection "(d)" after the annotation was written). The state court lacks jurisdiction to act while the case is before the federal court even if it is subsequently deemed nonremovable. *Id.* at 845. Since the state court is unable to act, it follows that the legislature would not direct specific legislation at the case.

However, despite the state court's inability to act, we conclude that this case was "pending" from the time the original complaint was filed. Removal is analogous to a state court appeal, the filing of which divests the trial court of jurisdiction except for purposes of perfecting the appeal. *See State v. Garcia,* 99 N.M. 466, 659 P.2d 918 (Ct.App.1983). In the context of state court appeals, a case will be deemed "pending" even if a final judgment has been reached if subsequent district court proceedings can be traced to appellate remand instructions or an opinion that directs a party to a new cause of action. *See Brown v. Board of Educ.,* 81 N.M. 460, 468 P.2d 431 (Ct.App.1970). Here, the jurisdiction of the state court was suspended while the case was before the federal court, a situation analogous to the suspension of a trial court's jurisdiction when this court considers an appeal that is ultimately dismissed for lack of a final order. *See Garcia,* 99 N.M. at 472, 659 P.2d at 924. Accordingly, we agree with the district court that the earlier venue statute controls.

### B. *Venue*

■ We next consider whether or not dismissal of the state engineer was required under the statutes in effect at the time the original complaint was filed. EBID contends that Section 72–4–17 is a venue statute that controls over the more-general provisions of Section 38–3–1(G). In the alternative, EBID argues that the claims against the state engineer could nonetheless be heard in Dona Ana County under a "pendent venue" theory.

It appears that the district court believed that the basis for venue in Dona Ana County was limited to NMSA 1978, Section 38–3–1(A) (Repl.Pamp.1987). Under this general venue statute, venue was proper in Dona Ana County because it is the place where plaintiff and the majority of defendants reside. However, Section 38–3–1(G) states that "suits against any state officers as such shall be brought in the court of the county wherein their offices are located, at the capital and not elsewhere." This mandatory venue provision controls over the more-general provisions of Section 38–3–1(A). *See United Nuclear Corp. v. Fort,* 102 N.M. 756, 700 P.2d 1005 (Ct.App.1985). It therefore might appear that the district court properly dismissed the state engineer for lack of venue. However, *United Nuclear* does not control because, under the facts of this appeal, there is a second mandatory venue provision that conflicts with Section 38–3–1(G).

Section 72–4–17 states in part that "[t]he court in which any suit involving the adjudication of water rights may be properly brought shall have exclusive jurisdiction to hear and determine all questions necessary for the adjudication of all water rights within the stream system involved." The dispositive language is the phrase "may be properly brought." A plain reading of this

section shows that it is intended to consolidate jurisdiction in a single court once the venue statute has been satisfied. However, it does not explicitly state where venue is proper.

Section 72–4–17 further states that "the attorney general may bring suit ... in any court having jurisdiction over any part of the stream system, which shall likewise have exclusive jurisdiction for such purposes." This language indicates that the legislature intended that jurisdiction be in a court having jurisdiction over the land through which the stream system flows. However, this language applies only to the attorney general and does not clearly answer the issue of proper venue when the water adjudication is brought by a private party. Nonetheless, we believe that the legislature intended to consolidate jurisdiction over all questions relating to a water adjudication in a court having jurisdiction over any part of the stream system and that venue was proper in Dona Ana County under NMSA 1978, Section 38–3–1(D)(1) (Repl.Pamp.1987).

Section 38–3–1(D)(1) states that "when lands or any interest in lands are the object of any suit in whole or in part, such suit shall be brought in the county where the land or any portion thereof is situate." This is a mandatory venue provision. *See* NMSA 1978, § 12–2–2(I) (Repl.Pamp.1988) (word "shall" is mandatory). Water rights are real property rights that are generally tied to specific land. *See New Mexico Prods. Co.*, 42 N.M. at 321, 77 P.2d at 641; *see also State ex rel. Reynolds v. Holguin*, 95 N.M. 15, 618 P.2d 359 (1980) (all water rights are appurtenant to specific acreage); *Posey v. Dove*, 57 N.M. 200, 257 P.2d 541 (1953) (water rights are real property rights); NMSA 1978, § 72–1–2 (Repl.1985) (waters appropriated for irrigation purposes are appurtenant to specified land unless severed from that land in the manner provided by law); *cf. Heath v. Gray*, 58 N.M. 665, 274 P.2d 620 (1954) (holding that petition that asserted interest in oil and gas lease was a suit in which an interest in lands was the object). We thus conclude that under Section 38–3–1(D)(1), suits involving water rights must be brought in a

county through which the stream or any portion of the stream flows. All of the property rights involved in this suit are located in Dona Ana and Sierra counties. Venue is therefore proper in Dona Ana County.

What exists, then, is a conflict between two mandatory venue provisions: Section 38–3–1(D)(1), governing the adjudication of the water, and Section 38–3–1(G), governing suits brought against the state engineer. We recognize that the state engineer does not have a property interest in the water rights, but rather a regulatory interest that does not come within Section 38–3–1(D) because it cannot be construed as an interest in land. *See City of Albuquerque v. Village of Corrales*, 88 N.M. 185, 539 P.2d 205 (1975). Nonetheless, the causes of action relating to the state engineer affect the water rights involved in the adjudication. Because the Dona Ana County district court properly has venue over the water rights adjudication, Section 72–4–17 requires that that court have exclusive jurisdiction over all questions relating to the water rights involved, including those against the state engineer. *See Ulibarri v. Hagan*, 98 N.M. 676, 652 P.2d 226 (1982). Additionally, under Section 72–4–17 we do not believe that the district court in Santa Fe County would have jurisdiction to consider questions relating to water rights in Dona Ana and Sierra counties. *See generally Kalosha v. Novick*, 84 N.M. 502, 505 P.2d 845 (1973) (holding that venue means the place where a case is to be tried while jurisdiction refers to the power of a court to determine the case).

Because we conclude that venue is proper in Dona Ana County, we reverse the district court's order of dismissal.

## III. NMSU'S APPEAL

NMSU appeals the district court's denial of NMSU's motion to dismiss based on the argument that the state or, alternatively, the state through the state engineer was an indispensable party to the litigation and that the action should be dismissed since the state engineer could not be joined as a party. In light of our conclusion that the

state engineer could properly be joined as a party and our reversal of the district court's order dismissing the state engineer from the litigation, we consider NMSU's appeal moot and thus do not address it.

## CONCLUSION

For the reasons discussed above, we affirm the district court's order denying the United States' motion to dismiss and reverse the district court's order dismissing the state engineer as a party.

**IT IS SO ORDERED.**

APODACA and CHAVEZ, JJ., concur.